# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RELMAN, DANE & COLFAX PLLC**, <br><br> Plaintiff, <br><br> v. <br><br> **FAIR HOUSING COUNCIL OF SAN FERNADO VALLEY**, *et al.*, <br><br> Defendants. | Case No. 1:18-cv-00495 (TNM) |

## MEMORANDUM OPINION

The Fair Housing Council of San Fernando Valley ("FHC") and Mei Ling (collectively, "the Clients") retained Relman, Dane & Colfax PLLC ("Relman"), a Washington, D.C. law firm, to represent them in a False Claims Act suit against the City of Los Angeles and its Community Redevelopment Agency. But the attorney-client relationship soured, and the Clients told Relman that they were voiding their contingency fee agreements ("the Agreements") with the firm. Relman sued, alleging anticipatory breach and seeking a declaration that the Clients remained bound by the Agreements. The Clients moved to dismiss Relman's Complaint or to transfer this matter to the Central District of California ("CDCA"). The Court referred this case to Magistrate Judge Meriweather for full case management, and she has submitted a Report and Recommendation ("Report") on the Clients' motions. Relevant here, the Magistrate Judge recommends transferring this matter to the CDCA. For the reasons below, the Court will adopt the Report and transfer this matter over Relman's objections.

**I.**

The Report thoroughly recounts the background of this case. *See* R. & R. at 2–7, ECF

No. 33.[1]  Only a brief procedural history is necessary.  After Relman filed its Complaint, FHC moved to dismiss.  FHC argued that Relman's claims were not ripe, the Court lacked personal jurisdiction over FHC, and venue was improper.  FHC Mot. to Dismiss at 23–29, 32–46, ECF No. 10.  Ms. Ling also moved to dismiss, raising similar arguments.  Ling Mot. to Dismiss at 15–24, 26–30, ECF No. 22-1.  In the alternative, the Clients requested that the Court transfer this matter to the CDCA under 28 U.S.C. § 1404(a).[2]  *See id.* at 29 n.14; FHC Mot. to Dismiss at 46.  Relman opposed both motions on all fronts.  Opp'n to FHC Mot. to Dismiss, ECF No. 14; Opp'n to Ling Mot. to Dismiss, ECF No. 26.

The Magistrate Judge largely agreed with Relman.  She found that Relman's claims were ripe, that the Court had personal jurisdiction over the Clients, and that venue was proper.[3]  R. & R. at 10–36.  The Magistrate Judge, however, agreed with the Clients that the interest of justice supported transferring this matter to the CDCA.  *Id.* at 36–45.

Weighing the private interests in transfer, the Magistrate Judge concluded that the parties' choice of forum "slightly weighs against transfer," but the convenience of the parties and witnesses "tilts . . . slightly in favor of transferring the case to California."  *Id.* at 39, 41.  The other private interest factors—where the claim arose and the ease of access to sources of proof—according to the Magistrate Judge, are neutral.  *Id.* at 39, 41.

---

[1]  All citations are to the page numbers generated by the Court's CM/ECF system.

[2]  Relman complains that the Clients' arguments for transfer under Section 1404(a) were cursory.  But the Clients explicitly requested transfers under that section.  Ling Mot. to Dismiss at 29 n.14, ECF No. 22-1; FHC Mot. to Dismiss at 46, ECF No. 10.  The grounds for those requests largely overlap with the arguments raised in the Clients' discussions on personal jurisdiction and venue—*e.g.*, "requiring Ling to litigate this action in the District of Columbia would impose an inequitable and onerous burden," Ling Mot. to Dismiss at 30 (arguing forum non conveniens).  The Magistrate Judge did not error by considering them.

[3]  Neither FHC nor Ms. Ling objected to the Report.

As for the public interest in transfer, the Magistrate Judge concluded that the related False Claims Act litigation pending in the CDCA—the litigation underlying the Agreements at issue—"favors transfer." *Id.* at 43. The other public interest factors—the relative congestion of the courts, the local interest in resolving the controversy, and the courts' familiarity with governing law—are neutral, according to the Magistrate Judge. *Id.* at 42–45. Finally, she determined that the balance of public and private interests favors transfer. *Id.* at 45.

Relman objects. Objs. to R. & R., ECF No. 34. It argues that it was improper for the Magistrate Judge to consider the public interest factors after finding that the private interest factors were in equipoise. *Id.* at 12–13. More, Relman objects to the Magistrate Judge's findings on several individual private and public interest factors. *Id.* at 14–22.

## II.

The Court's review is limited to "only those issues that the parties have raised in their objections to the Magistrate Judge's report." *Taylor v. District of Columbia*, 205 F. Supp. 3d 75, 79 (D.D.C. 2016). "The decision whether to stay or transfer a case is a non-dispositive matter committed to the broad discretion of a district court." *Am. Ctr. for Civil Justice v. Ambush*, 794 F. Supp. 2d 123, 129 (D.D.C. 2011). And "[w]here, as here, a party timely objects to a magistrate judge's decision with respect to a non-dispositive matter, the Court must modify or set aside all or part of that decision if it is 'clearly erroneous' or 'contrary to law.'" *Id.* (quoting Fed. R. Civ. P. 72(a)).

## III.

Relman objects to the Magistrate Judge's recommendation to transfer this matter. But the Magistrate Judge's determinations were neither clearly erroneous nor contrary to law.

First, Relman argues that it was "contrary to law" for the Magistrate Judge to evaluate the

3

public interest factors after finding that the private interest factors tipped in neither direction. Objs. to R. & R. at 12–13. Not so. Indeed, the cases that Relman cites betray its argument.

According to Relman, under Section 1404(a), "transfer is permitted only '[i]f the balance of the private *and* public interests favors a transfer of venue.'" *Id.* at 13 (quoting *Flick v. Sessions*, 298 F. Supp. 3d 205, 207 (D.D.C. 2018)) (emphasis added by Relman). Exactly. The decision whether to transfer a matter depends on a balance of private *and* public interest factors. Nothing in *Flick* precludes a court from considering public interest factors where the private interest factors are unclear. Indeed, courts often consider public interest factors when the private interest factors are inconclusive. *See, e.g.*, *Douglas v. Chariots for Hire*, 918 F. Supp. 2d 24, 33 (D.D.C. 2013) ("Finding that the private-interest factors do not tilt strongly in favor of either venue, the Court now turns to the public-interest ones."); *see also Bederson v. United States*, 756 F. Supp. 2d 38, 50 (D.D.C. 2010) (considering the public interest factors even after "conclud[ing] that the private interest factors weigh against transfer").

But Relman argues that where "the private interest factors do not support the transfer" the Court "is not required to weigh the public interest factors." Objs. to R. & R. at 13 (quoting *Ingram v. Eli Lilly & Co.*, 251 F. Supp. 2d 1, 5 (D.D.C. 2003)). Perhaps. But this is not a case in which the private factors clearly weigh against transfer. And even the court in *Ingram* considered the public interest factors after determining that the private interest factors did not support the transfer. 251 F. Supp. 2d at 5–6. More still, even if a court *may* stop its inquiry after finding that the private interest factors do not favor transfer, Relman has cited no authority *requiring* the Court to give the private interest factors alone dispositive weight. So it was not contrary to law for the Magistrate Judge to consider the public interest factors after concluding that the private interest factors were in equipoise.

Next, Relman objects to the Report's findings on individual private interest factors. Relevant here, the private interest factors courts consider when weighing whether to transfer a matter include the parties' choice of forum, the convenience of parties and witnesses, and where the claim arose. *Bederson*, 756 F. Supp. 2d at 46. The Magistrate Judge's findings on those factors were neither clearly erroneous nor contrary to law.

The Magistrate Judge correctly recognized that "[t]he plaintiff's choice of forum is typically a 'paramount consideration'" and thus Relman's "choice of forum weighs strongly against transferring venue." R. & R. at 38–39 (quoting *Aishat v. U.S. Dep't of Homeland Sec.*, 288 F. Supp. 3d 261, 268 (D.D.C. 2018)). Even so, the Magistrate Judge determined that, given the Clients' legitimate interest in transfer, their choice of forum somewhat counterbalanced Relman's interest. *Id.* at 39. Indeed, while it is true that "a defendant's choice of forum is . . . not ordinarily entitled to deference . . . to the extent th[at] factor carries any heft . . . it weighs in favor of transfer." *Aishat*, 288 F. Supp. 3d at 269. Summing up these considerations, the Magistrate Judge determined that Relman's choice of forum still controlled: on balance, the parties' choice of forum "weigh[ed] slightly against transfer." R. & R. at 39. So the Magistrate Judge correctly gave Relman's choice of forum "paramount consideration," finding that the Clients' choice of forum did not neutralize or overtake Relman's preference.

The Magistrate Judge also correctly determined that where the claim arose is a neutral factor here. Relman argues that for purposes of the transfer analysis, claims arise where most of the significant events giving rise to the claims occurred. Objs. to R. & R. at 14. And, according to Relman, that is Washington, D.C. *Id.* at 15. To support its argument, Relman points to the Magistrate Judge's analysis of whether venue is proper in this District. *Id.* But, of course, considering only D.C.'s connection to the litigation is a unidirectional examination. That

5

analysis does not consider whether other substantial events might have occurred elsewhere. R. & R. at 34–35 (citing 28 U.S.C. § 1391(b)). Thus, that venue is proper in this District does not establish that *most* of the substantial events occurred here.

True, the Magistrate Judge concluded that "a substantial portion of the events concerning [the Clients'] retention of [Relman] . . . occurred in D.C." R. & R. at 35. But she also found that several significant events occurred in California. For example, the Clients signed the Agreements in California, and while Relman did legal work here, it did so to further the Clients' interest in the California-based litigation. *Id.* at 39. And "pertinent communications were sent from California to D.C. and *vice versa*." *Id.* The Magistrate Judge did not clearly err in finding that both forums, this District and the CDCA, hosted significant events relevant to Relman's claim, and "[w]here claims arise from actions in several fora, 'this factor does not weigh in favor or against transfer.'" *Douglas*, 918 F. Supp. 2d at 32 (quoting *Bederson*, 756 F. Supp. 2d at 48).

More, the convenience of the parties and witnesses favors transfer. The Magistrate Judge recognized that "[l]itigating in a particular forum is likely to inconvenience one party or another unless all parties reside in the chosen district." R. & R. at 40 (quoting *Defs. of Wildlife v. Jewell*, 74 F. Supp. 3d 77, 85 (D.D.C. 2014)). According to Relman, traveling to California would inconvenience it. Meanwhile, FHC claims it would be inconvenient for it to defend against Relman's suit in this District. If those were the only considerations this factor would probably not favor transfer. *See Fanning v. Capco Contractors, Inc.*, 711 F. Supp. 2d 65, 70–71 (D.D.C. 2010) (where transferring an action "would merely shift the balance of inconvenience from [the defendants] to [the plaintiff] . . . , such a shift is insufficient to warrant a transfer to the defendant's favored venue"). But the Magistrate Judge appropriately found that the convenience for Ms. Ling of litigating this matter in the CDCA tips the scale toward transfer. R. & R. at 41.

6

Ms. Ling is wheelchair-bound, and she is "in poor physical health." Ling Decl. ¶ 26, ECF No. 22-2. The Magistrate Judge did not clearly err in finding that cross-country travel would pose a considerable hardship on Ms. Ling. Indeed, "[a] moving party's medical disability can support a motion to transfer venue." *Elemary v. Philipp Holzmann A.G.*, 533 F. Supp. 2d 144, 153 (D.D.C. 2008). Even though Relman has offered to take Ms. Ling's deposition in California, that does not relieve the hardship she would face attending hearings and, if necessary, trial. Transferring this matter would allow Ms. Ling to be present for the case brought against her and thereby better participate in her defense. The Court agrees with the Magistrate Judge's conclusion that Ms. Ling's interest in properly defending the case against her tipped the scale in favor of transfer.

As for the convenience of witnesses, the Report correctly noted that "[t]he witnesses are based in both D.C. and California." R. & R. at 40. Relman does not dispute that there are witnesses in both forums, but it claims that the greater number of "important witnesses" are in the District. Objs. to R. & R. at 15–16. But it is not clear why Relman's D.C.-based witnesses would be more important than the many California-based witnesses whom FHC has identified, *see* R. & R. at 40. At this pre-discovery stage, the relative importance of witnesses is a guessing game the Court declines to play.

To the extent the Court can identify an "important witness," Ms. Ling certainly qualifies, and "[w]hen considering the convenience of witnesses, a court must pay particular attention to whether important witnesses will be available to give live trial testimony." *United States ex rel. Westrick v. Second Chance Body Armor, Inc.*, 771 F. Supp. 2d 42, 48–49 (D.D.C. 2011). As discussed above, if this matter proceeds here, it will be difficult for Ms. Ling to participate at trial. Ultimately, Relman has not shown that the Magistrate Judge's conclusion that the

7

convenience of the parties and witnesses slightly favors transfer was either clear error or contrary to law.

Relman also objects to the Magistrate Judge's findings on the public interest factors. The public interest factors include the potential transferee court's familiarity with applicable law and the congestion of the transferee court compared to that of the transferor court. *Id.* at 46. More, the Magistrate Judge considered the related litigation pending in the CDCA. R. & R. at 43–44. None of the Magistrate Judge's findings on those factors was clearly erroneous or contrary to law.

First, Relman contends that the Magistrate Judge wrongly found that the relative congestion of the courts is a neutral factor. *See* Objs. to R. & R. at 17–18. Relman notes that, on average, 442 cases are pending before each judge in the CACD while judges here have an average of only 280 cases. *Id.* (citing 2017 statistics from the U.S. Courts' website). But those statistics tell only part of the story.

"When considering the congestion of the courts," courts in this District often "compare[] the districts' median times from filing to disposition or trial." *Bartolucci v. 1-800 Contacts, Inc.*, 245 F. Supp. 3d 38, 49 (D.D.C. 2017) (cleaned up). Under those metrics, this District is more congested that the CDCA. This District has a longer median time from filing to disposition—5.6 months compared to 5 months—and a longer median time from filing to trial—48.7 months compared to 22 months.[4] Ultimately, the Court declines to choose between the competing metrics here.[5] Both districts are busy. It was neither clearly erroneous nor contrary to law for

---

[4] *See* U.S. District Courts Combined Civil and Criminal Federal Court Management Statistics, https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2019/06/30-1 (last updated June 30, 2019).

[5] Raw statistics provide "only a rough measure of the relative congestion of the dockets in the two districts." *Aishat*, 288 F. Supp. 3d at 271. "Any disparities between the lengths of time from filing to trial may also reflect differences other than congestion, such as differences in the types of cases that are likely to be tried in each district

the Magistrate Judge to conclude that this factor is neutral. *See, e.g.*, *Defs. of Wildlife*, 74 F. Supp. 3d at 88.

Nor was it clear error or contrary to law for the Magistrate Judge to conclude that the related litigation pending in the CDCA favors transfer. There is a clear, strong relationship between this case and the litigation in California. The Agreements at issue relate to Relman's representation of the Clients in the False Claims Act case pending in the CDCA, and the Client's merits defenses rely largely on Relman's conduct in that case and in a related case also brought in the CDCA. *See, e.g.*, Ling Mot. to Dismiss at 14–15, 27 (citing Relman's representation in CDCA as grounds for her voiding her Agreement with the firm). Even so, Relman argues that proceeding to the merits here—determining whether to enforce the Agreements—does not create the potential for inconsistent judgments on the same legal issues. Objs. to R. & R. at 21–22.

But overlapping legal claims are not required for a finding that cases are related enough to favor transfer. "[C]ourts have transferred cases to jurisdictions with related pending matters even when the cases merely shared similar facts, rather than similar legal claims." *Barham v. UBS Financial Servs.*, 496 F. Supp. 2d 174, 180 (D.D.C. 2007) (citing *Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48, 58 (D.D.C. 2000)). The relevant facts here are largely what happened during Relman's representation before the CDCA in the two related lawsuits. Those suits have been pending in the CDCA for nearly a decade. As the Magistrate Judge pointed out, the CDCA is uniquely well-positioned to know and to resolve any disputes about those facts. *See* R. & R. at 43.

And the CDCA is already familiar with the issues presented here. Relman filed a Notice of Lien against Ms. Ling highlighting the dispute over the Agreements. *See* Notice of Lien,

---

and the level of discovery and pre-trial motion practice required in those cases." *Id.* (quoting *United States v. H&R Block, Inc.* 789 F. Supp. 2d 74, 84–85 (D.D.C. 2011)).

*United States ex rel. Ling v. City of L.A.* (C.D. Cal. Sept. 15, 2017), No. 2:11-cv-00974-PSG-JC, ECF No. 119. And Relman informed CDCA that it would ask that court to resolve its fee dispute with Ms. Ling if she stands to recover anything in that case. *See id.* at 7. Ms. Ling opposed that lien. She raised arguments that Relman had violated its fiduciary duties, much like her proposed defenses here. *See* Mem. in Supp. of Consent to Leave & Obj. to Notice of Lien, *United States ex rel. Ling v. City of L.A.* (C.D. Cal. Aug. 4, 2017), No. 2:11-cv-00974-PSG-JC, ECF No. 103.

This case is more entangled with the CDCA litigation than Relman admits. For example, even if the Agreements are enforceable, the CDCA will need to determine what fees Relman should receive. FHC argues that Relman's entitlement to fees depends on the terms of any settlement in the False Claims Act litigation. *See* FHC Resp. to Objs. at 23–25, ECF No. 35. Indeed, in supplemental briefing, FHC and Relman argue whether a pending partial settlement in the CDCA firms up Relman's claims or potentially renders them moot. *See* Relman Suppl., ECF No. 31; FHC Suppl. Resp., ECF No. 32. CDCA will be better positioned to assess the outcome of the litigation pending before it and the terms of any settlement it approves. *Cf. In re Nonparty Subpoenas Duces Tecum*, 327 F.R.D. 23, 26 (D.D.C. 2018) (finding that "given the close factual relationship between the two motions" and that a ruling on one might influence the merits of another, it is best to have one court consider all the issues).

And to assess Relman's application for fees, the Clients' arguments about the propriety of the firm's conduct may again become relevant. It is best to have a court that is intimately familiar with the parties and the underlying facts and circumstances evaluate the full picture. *See Weinberger v. Tucker*, 391 F. Supp. 2d 241, 245 (D.D.C. 2005) (noting courts consider "whether one circuit is more familiar with the same parties and issues or related issues than other courts"). Given the CDCA's familiarity with the underlying litigations, Relman's conduct representing the

Clients in those litigations, and many of the issues the parties raise here, the Court agrees with the Magistrate Judge's determination that the related litigation in CDCA favors transfer. *Cf. Wyandotte v. Salazar*, 825 F. Supp. 2d 261, 267 (D.D.C. 2011) (noting a transferee court's "specialized knowledge of both the parties, their history of litigation, and the statute as issue" weighs toward transfer).

Finally, it was not clear error or contrary to law for the Magistrate Judge to conclude that the familiarity with governing law is a neutral factor. The Magistrate Judge noted that the Agreements contain a choice-of-law provision suggesting that D.C. law applies. R. & R. at 28. But the enforceability of that provision hinges on whether its enforcement would "contravene a 'fundamental policy'" of California. *See Orchin v. Great-West Life & Annuity Ins. Co.*, 133 F. Supp. 3d 138, 148 (D.D.C. 2015).[6] The Clients have cited several potential conflicts, and California courts are better situated to resolve that policy question. In any event, even if local law applies as Relman argues, this factor would still not fully offset the finding that the related litigation favors transfer. This is a diversity case, and federal courts sitting in diversity often apply laws from outside their district. *See, e.g.*, *Fawhinmi v. Lincoln Holdings, LLC*, 895 F. Supp. 2d 148 (D.D.C. 2012) (applying Virginia law in a diversity case). Nothing suggests that D.C. contract law is particularly complex or unique. So the relative familiarity with the governing law carries little weight. The Magistrate Judge's conclusions that this factor was neutral and that the overall balance of factors favored transfer were neither clear error nor contrary to law.

---

[6] Relman argues that the Magistrate Judge ignored that D.C.'s choice-of-law rules will govern even if the case is transferred. Objs. to R. & R. at 18–19. But the Magistrate Judge's analysis suggests otherwise. *See* R. & R. at 41–42. The Magistrate Judge acknowledged that the Agreements' choice-of-law provision will control unless "enforcing the choice-of-law provisions would 'contravene a fundamental policy' of California." *Id.* at 42 (citing *Orchin v. Great-West Life & Annuity Ins. Co.*, 133 F. Supp. 3d 138 (D.D.C. 2015) (applying D.C. choice-of-law rules)).

11

Of all the factors, the salient ones here are the plaintiff's choice of forum, the convenience of the parties, and the related litigation. The Magistrate Judge did not clearly err by determining that the weight of these factors favored transfer.

**IV.**

For all these reasons, the Court will adopt the Report in full. The Court will grant in part and deny in part the Clients' Motions to Dismiss and will transfer this case to the Central District of California. A separate order will issue.

Dated: September 27, 2019

TREVOR N. McFADDEN
United States District Judge